**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

|  |  |
|---|---|
| In re:<br><br>MICHAEL AND DEBRA MCDERMOTT<br><br>Debtor.<br><br>―――――――――――――――――<br><br>MICHAEL MCDERMOTT,<br>Plaintiff,<br>v.<br>FIA CARD SERVICES, N.A.,<br>WEINSTEIN & RILEY, P.S., and<br>RICHARD S. RALSTON,<br>Defendants. | Chapter 7<br>Case No.09-43858-MSH<br><br><br><br><br><br><br>Adv. Pro. No. 10-4085 |

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SANCTIONS**

The defendants' motion to dismiss this adversary proceeding [docket #5], their motion for sanctions or costs [docket #16], and the plaintiff's opposition to each of these motions [docket #19 and #20] came on for a non-evidentiary hearing before me on September 8, 2010.. At issue is whether the defendants acted improperly in bringing a nondischargeability action under 11 U.S.C. (Bankruptcy Code) § 523(a)(2)(A) against the Debtor, Michael McDermott, who is the plaintiff in this adversary proceeding.

**Facts**

Mr. McDermott had an open-end consumer credit card account which was serviced and possibly owned by defendant FIA Card Services, N.A. ("FIA"). On September 17, 2009 Mr. McDermott and his wife filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

Defendant Richard S. Ralston, of the Seattle-based law firm of Weinstein & Riley, P.S. ("WR"), is licensed to practice law in the Commonwealth of Massachusetts. WR represents that it is counsel to several credit card companies and credit card servicers, including FIA. On October 7, 2009 Mr. Ralston sent the Debtors' bankruptcy counsel a letter requesting an explanation of certain cash advances taken by Mr. McDermott approximately four months before the bankruptcy petition was filed.[1] In the letter Mr. Ralston asked for a detailed description of the events which led to Mr. McDermott's decision to file bankruptcy and stated that the explanation was sought in lieu of conducting an examination of Mr. McDermott pursuant to Fed. R. Bankr. P. 2004. The letter also offered Mr. McDermott the opportunity to resolve the matter by agreeing to judgment in the amount of $6,000 or making a one-time payment of $4,500. There was no response to the letter and on December 16, 2009, approximately one week before the deadline to object to the Debtors' discharge or the dischargeability of a particular debt, FIA, through Mr. Ralston, filed an adversary proceeding against Mr. McDermott (Adversary Proceeding No. 09-4204) (the "Nondischargeability Action"). FIA sought a declaration that $6,000 of the $8,088.78 owed by Mr. McDermott to FIA as of the bankruptcy petition date was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The basis for the Nondischargeability Action was that Mr. McDermott incurred debt at a time when he could not pay his existing obligations as they came due, and that fact together with other circumstances cited in the nondischargeability complaint, led FIA to believe Mr. McDermott took the cash advances without intending to repay them.[2]

---

[1] The letter is attached as Exhibit B to the defendants' motion to dismiss. The plaintiff has not challenged the authenticity of the letter.

[2] I take judicial notice of the pleadings in the Nondischargeability Action. *LeBlanc v. Salem (In*

2

On December 28, 2009 FIA filed a notice of voluntary dismissal of the adversary proceeding with prejudice. In the notice, FIA stated that "[a]fter informal discovery, [FIA] does not wish to proceed further." In their motion to dismiss the current adversary proceeding, the defendants state that FIA's decision to dismiss occurred after a discussion between Mr. Ralston and the Debtors' bankruptcy attorney. The Nondischargeability Action was dismissed on January 12, 2010.

On May 31, 2010, Mr. McDermott commenced the within adversary proceeding against FIA, Mr. Ralston and WR seeking damages, costs, and attorneys' fees for harm Mr. McDermott alleges he suffered as a result of the defendants' commencement of the Nondischargeability Action without any intention to prosecute that action. The defendants now seek dismissal of this adversary proceeding and an award of sanctions and costs in an unspecified amount pursuant to Fed. R. Bankr. P. 9011.

**Position of the Parties**

In this action the plaintiff seeks judgment against the defendants under several common law and statutory theories, including those arising under the Bankruptcy Code,[3] but the crux of this action, regardless of the legal theory presented, is the plaintiff's claim that FIA and its attorneys filed the Nondischargeability Action without any intention to prosecute it but rather in

---

*re Mailman Steam Carpet Cleaning Corp.),* 196 F.3d 1, 8 (1st Cir. 1999).

[3] The complaint is not organized by count but instead it lists various legal theories as the potential bases for relief in a section entitled "Statement of Claims." These are §§ 523(d), 105, and 362 of the Bankruptcy Code, Fed. R. Bankr. P. 9011, Massachusetts Fair Debt Collection Practices Act, Mass. Gen. Laws ch. 93, § 49, the federal Fair Debt Collection Practices Act "FDCPA"), abuse of process under Massachusetts common law, and intentional infliction of emotional distress.

3

order to obtain either a default judgment or a quick settlement from the plaintiff. To support this assertion the plaintiff claims that between January 1, 2009 and January 6, 2010 WR, with Mr. Ralston as counsel or successor counsel, filed 58 nondischargeability adversary proceedings in the District of Massachusetts for improper credit card use and all but one resulted in settlements or dismissals without court action on the merits. While the plaintiff acknowledges that the complaint in the Nondischargeability Action stated a *prima facie* case under § 523(a)(2)(A),[4] he nevertheless urges me to break new legal ground and find that the defendants' conduct is *per se* bad faith and thus actionable. The plaintiff also asserts, upon information and belief, that FIA is not the real party in interest with respect to the debt arising from his use of the credit card. In his opposition to the motion to dismiss, however, the plaintiff states he has no knowledge or belief as to the "true" owner of the account, FIA's relationship to such owner or FIA's right to enforce any servicing rights.

The defendants request dismissal of all counts in the complaint pursuant to Fed. R. Civ P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b). Relying on In re Ashland, 307 B.R. 317 (D. Mass. 2044), they assert that sanctions cannot be awarded against them under § 523(d) because the filing of the Nondischargeability Action was substantially justified and because the early dismissal of the Nondischargeability Action constitutes special circumstances which would make such an award unjust. According to the defendants, §523(d) provides the exclusive

---

[4] In response to the defendants' statement that WR analyzes each case to determine whether the totality of the circumstances evidenced a debtor's intent not to repay the debt, the plaintiff stated:

> Admitted, affirmatively stating that the plausibility of facts underlying FIA's original nondischargeability complaint was never questioned. The plaintiff questions the bad faith intent from having brought the complaint with no intent to complete its prosecution.

4

Bankruptcy Code remedy for abusive and unjustified nondischargeability actions and thus the counts in the complaint based on § 105 and § 362 of the Bankruptcy Code must be dismissed. The defendants also assert that the complaint's Rule 9011 count cannot stand as the plaintiff failed to comply with the safe-harbor provisions of the rule and that Mass. Gen. Laws ch. 93, § 49 is not a remedy available to the plaintiff because it does not create a private right of action. They urge dismissal under Fed. R. Civ. P. 12(b)(1), made applicable by Fed. R. Bankr. P. 7012(b), of the counts based upon state statute, common law and the FDCPA, because these counts do not fall within the core or related-to jurisdiction of the court under the generally accepted test for related-to jurisdiction set forth in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). Additionally, the defendants argue that these claims fail to state claims upon which relief may be granted because the allegations in the complaint fall far short of the standard articulated in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct 1955, 167 L.Ed.2d 929 (2007). In addressing whether it was the proper party to bring the Nondischargeability Action, FIA maintains that based on its preliminary investigation, it was the owner of the credit card account but that even if FIA was merely the servicer and not the owner of the account, based on Greer v. O'Dell, 305 F.3d 1297 (11th Cir. 2002), and cases involving servicers of real estate mortgages, FIA nevertheless had standing to bring the Nondischargeability Action. Finally, the defendants request sanctions pursuant to Fed. R. Bankr. P. 9011 against Mr. McDermott and his counsel for their allegedly frivolous and misplaced assertion of Rule 9011 and Mass. Gen. Laws ch 93, § 49 claims.

       The Plaintiff, reiterating his attempt to expand existing law, acknowledges that his count

under Rule 9011 fails but states he has withdrawn it, although he has not filed a motion to do so.[5] Similarly he concedes that there is no private right of action under Mass. Gen. Laws ch 93, § 49, although he states he will send a demand letter and amend the complaint to proceed under Mass. Gen. Laws ch 93A if the complaint is not dismissed.

With respect to his counts under the Bankruptcy Code and generally under state and federal law, the plaintiff relies on a singular factual predicate, namely that FIA brought the Nondischargeability Action as a tactic to extract a quick recovery and had no intention to actually prosecute it. The plaintiff alleges that FIA, in conjunction with its counsel, had developed a business strategy to collect on low-dollar nondischargeability claims against consumer debtors by filing § 523 actions in the hopes of obtaining a default judgment or quick settlement. If they were unsuccessful in meeting these objectives, as they were in the Nondischargeability Action, FIA would dismiss the nondischargeability actions rather than proceed to trial. The plaintiff characterizes this litigation strategy as exemplifying bad faith thus entitling him to recover damages from the defendants.

The plaintiff suggests that the bankruptcy court has subject matter jurisdiction over his state law and FDCPA claims based on theories of either 'related to" or supplemental jurisdiction because the outcome of this proceeding could conceivably have an effect on the bankruptcy estate.

## Discussion

*Rule 12(b)(6)*

---

[5] The defendants filed their motion to dismiss on July 1, 2010. The Debtor filed his opposition on August 15, 2010, more than 21 days after the defendants' motion was filed. Therefore, the complaint could not be amended without the written consent of the defendants or order of this court. See Fed. R. Civ. P. 15(a)(1), made applicable by Fed. R. Bankr. P. 7015.

6

In deciding whether to grant a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012, I must review the complaint to determine if the complaint contains sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. Bell Atlantic v. Twombley, 550 U.S. 544, 570, 127 S.Ct 1955, 1966, 167 L.Ed2d 929 (2007). I must accept as true the factual allegations of the complaint but not the legal conclusions, even if couched as facts. Ashcroft v. Iqbal, --U.S.--, 129 S.Ct 1937, 1947, 173 L.Ed.2d 868 (2009). Recitations of the elements of a cause of action supported only by legal conclusions are insufficient to withstand a motion to dismiss. Id.

*Section 523(d)*

The question at the heart of this adversary proceeding is whether FIA's strategy to file a § 523(a)(2) complaint with no intention to prosecute it renders FIA's position not substantially justified under § 523(d). To answer this question I turn first to the statute.

> Section 523(d) was enacted to discourage creditors from filing **§** 523(a)(2) complaints without first carefully reviewing the legal and factual bases for their fraud-based nondischargeability claims. ... Congress was concerned that, absent the meaningful possibility that a successful defending debtor would be awarded his or her fees and costs, unscrupulous or inconsiderate creditors might file iffy actions willy-nilly, betting that their financially strapped consumer debtors would settle to avoid defense costs.

In re McCarthy, 243 B.R. 203, 208 (1st Cir.B.A.P. 2000.[6] In cases such as the one currently

---

[6] Section 523(d) provides:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

7

before me, where there is no question that the prerequisites of § 523(d), namely that there was a discriminability action brought under § 523(a)(2), that the debt was a consumer debt, and that the debt was ultimately discharged, are met, the creditor who commenced the nondischargeabilty action bears the burden of proving that the action was substantially justified or that special circumstances exist that which make the award unjust.  McCarthy, 243 B.R. at 208.

Congress intended that awards under § 523(d) be based upon the standard employed in awarding attorney's fees under the Equal Access to Justice Act ("EAJA").  See S.Rep. No. 65, 98th Cong., 1st Sess. 9-10 (1983) ("The Committee, after due consideration, has concluded that amendment to this provision to incorporate the standard for award of attorney's fees contained in the Equal Access to Justice Act strikes the appropriate balance between protecting the debtor from unreasonable challenges to dischargeability of debts and not deterring creditors from making challenges when it is reasonable to do so.").  See also AT&T Universal Card Services. Corp. v. Williams (In re Williams), 224 B.R. 523, 529 (2d Cir. B.A.P. 1998).  Indeed, both statutes use virtually identical language in mandating an award of attorney's fees to the prevailing party."[7]

In Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 1001 L.Ed.2d 490 (1988), a case dealing with the interpretation of "substantially justified" under the EAJA, the

---

[7] 28 U.S.C.A. § 2412 (d)(1)(A) provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was *substantially justified or that special circumstances make an award unjust.* (Emphasis supplied).

8

Supreme Court explained that the phrase "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (Internal citation and quotation marks omitted).  It does not mean "justified to a high degree" but rather "justified in substance or in the main".  Id.  In other words "a position can be justified even though it is not correct, and … it can be substantially ( i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."  Id. at 566 n. 2, 108 S.Ct. at 2550 n.2.

Determining whether there is substantial justification is a case specific inquiry that some courts hold calls for a "totality of the circumstances test."  Williams, 224 B.R. at 531.  Other courts engage in a three-part inquiry as to whether there is:

(1) a reasonable basis in law for the theory [the creditor] propounds;
(2) a reasonable basis in truth for the facts alleged; and
(3) a reasonable connection between the facts alleged and the legal theory advanced.

In re Baker, 206 B.R 507, 509 (Bankr. N.D. Ill. ), aff'd. 213 B.R. 834 (N.D.Ill. 1997).

The common thread running through all the cases dealing with "substantial justification" is that the court's analysis focuses on the objective criteria upon which the § 523(a)(2)(A) action is based, not on the subjective motives of the creditor in bringing it.  As the First Circuit bankruptcy appellate panel articulated in McCarthy, § 523(d) is intended to discourage the filing of "iffy" nondischargeability actions.  Here, the plaintiff has conceded the validity of the objective criteria under § 523(a)(2)(A) required to support the Nondischargeability Action but asks me nevertheless to break new ground by extending § 523(d)'s reach to include FIA's motivations in commencing the Nondischargeability Action.

Even if the concept of substantial justification under § 523(d) is intended to incorporate a

9

creditor's motives in commencing a nondischargeability action, I find FIA's business strategy in bringing the Nondischargeability Action with no intention of going to trial does not in and of itself negate FIA's substantial justification in bringing the Nondischargeability Action. Furthermore, the defendants' behavior in other cases involving efforts to reach quick settlements with debtors is not relevant to the inquiry of whether their actions were substantially justified in this case. On the record before me, I find the positions asserted by the defendants in the Nondischargeability Action to have been substantially justified.

*Remaining Federal and State Law Causes of Action*

I need not decide whether this court has supplemental or related-to jurisdiction to adjudicate the other federal and state law claims asserted in the complaint. This is because the facts alleged by the Plaintiff are insufficient to state a cause of action under any of them. When a party decides to file suit he can have any number of motives– to seek recompense, take revenge, tell his side of the story to a judge or jury, survive a summary judgment motion and then settle– to name a few. FIA's strategy, while arguably cold-hearted or mercenary, is no more so than the all-too-common converse situation of the deep-pocketed corporate plaintiff spending sums to litigate far in excess of what it could ever hope to recover from its outgunned, financially-strapped opponent because someone in management wants to send a message or make an example.

Psychology and social work are areas outside the expertise of most judges. It is inappropriate and dangerous for a court to attempt to delve into a party's motivation for litigating unless those motivations are for a clearly improper purpose such as to harass, delay or escalate

10

costs,[8] which FIA's were not.

*Defendants' Request for Sanctions*

The Defendants seek sanctions pursuant to Fed. R. Bankr. P. 9011 against the Plaintiff and his counsel for asserting against them a claim under Fed. R. Bankr. P. 9011 without complying with the safe harbor provisions of that rule and a claim under Mass. Gen. Laws ch. 93, § 49 even though no private right of action exists under that section.  The Plaintiff's response indicates a belief that because he "withdrew" these claims in his opposition to the defendants' motion to dismiss, filed at least 25 days after his counsel received an advance copy of the defendants' sanction motion, the plaintiff and his counsel are immune from sanctions.  They are not.  Similarly, the plaintiff's assertion that, if this adversary proceeding is not dismissed, he will amend his complaint to assert a claim under Mass. Gen. Laws ch. 93A because he concedes there is no private right of action under Mass. Gen. Laws ch. 93, § 49, does not absolve the plaintiff and his counsel from having asserted a frivolous claim in the first place.  Therefore, I will impose sanctions on the plaintiff and his counsel, jointly, in the amount of $600, of which $200 is to be paid to each defendant.

**Conclusion**

For the reasons set forth above, the defendants' motion to dismiss will be allowed. The defendants' motion for sanctions and costs will be allowed.

Separate orders will issue.

Dated: November 8, 2010                                By the Court,

                                                       *[signature]*

                                                       Melvin S. Hoffman

---

[8] See, e.g., Fed. R. Bankr. P. 9011(b)(1).

11

U.S. Bankruptcy Judge